J-S27015-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.O.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1080 EDA 2024 |

Appeal from the Decree Entered February 12, 2024
In the Court of Common Pleas of Northampton County Orphans' Court at
No(s): A2023-0044

| | | |
|---|---|---|
| IN RE: V.C.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1082 EDA 2024 |

Appeal from the Decree Entered February 12, 2024
In the Court of Common Pleas of Northampton County Orphans' Court at
No(s): A2023-0045

| | | |
|---|---|---|
| IN RE: H.S.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1084 EDA 2024 |

Appeal from the Decree Entered February 12, 2024
In the Court of Common Pleas of Northampton County Orphans' Court at
No(s): A2023-0046

| | | |
|---|---|---|
| IN RE: I.A.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |

J-S27015-24

|  | : |  |
| --- | --- | --- |
| APPEAL OF: J.C. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1086 EDA 2024 |

Appeal from the Decree Entered February 12, 2024
In the Court of Common Pleas of Northampton County Orphans' Court at
No(s): A2023-0047

| IN RE: L.S.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1088 EDA 2024 |

Appeal from the Decree Entered February 12, 2024
In the Court of Common Pleas of Northampton County Orphans' Court at
No(s): A2023-0048

| IN RE: N.C.C., A MINOR | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1090 EDA 2024 |

Appeal from the Decree Entered February 12, 2024
In the Court of Common Pleas of Northampton County Orphans' Court at
No(s): A2024-0002

BEFORE:   LAZARUS, P.J., NICHOLS, J., and COLINS, J.[*]

_____

[*] Retired Senior Judge assigned to the Superior Court.

- 2 -

MEMORANDUM BY LAZARUS, P.J.:                    **FILED NOVEMBER 19, 2024**

J.C. (Mother) appeals from the decrees, entered in the Court of Common Pleas of Northampton County, involuntarily terminating her parental rights to her six minor children, K.O.C. (born 6/2020), V.C.C. (born 6/2019), H.S.C. (born 5/2018), N.C.C. (born 7/2015), I.A.C. (born 7/2014), and L.S.C. (born 6/2013).[1]  After careful review, we affirm on the basis of the trial court opinion authored by the Honorable Jennifer R. Sletvold.[2]

Mother and C.C. (Father)[3] (collectively, Parents) are the parents of 13 children.  The instant matter concerns Parents' six youngest children (collectively, Children).  Prior to placement, all 13 children, the family's two dogs, and Mother and Father lived in a one-bathroom Section VIII row home

_____

[1] On May 7, 2024, our Court *sua sponte* consolidated the six separate appeals at Nos. 1080 EDA 2024, 1082 EDA 2024, 1084 EDA 2024, 1086 EDA 2024, 1088 EDA 2024, and 1090 EDA 2024.  **See** Pa.R.A.P. 513.

[2] This case is now back to this Court after having been remanded for the preparation of a Pa.R.A.P. 1925(a)(2)(ii) opinion. **See In re:  K.O.C., V.C.C., H.S.C., I.A.C., L.S.C., & N.C.C.**, 2024 PA Super 231 (Pa. Super. filed Oct. 1, 2024).  On remand, the trial court also entered an order correcting an error in the transcript.  Specifically, the order notes that on page 266 of the notes of testimony for the hearing held on February 12, 2024, "the original transcript inadvertently identified the [c]ourt as speaking on lines four through eight[,] when[,] in fact[,] it was the [g]uardian *ad* [*l*]*item*, Leonard Mellon, Esquire." Order, 10/21/24 (italics added).  Accordingly, the court amended the transcript to accurately reflect the correct testimony.

[3] Father's parental rights were also involuntarily terminated with regard to Children.  In July 2024, our Court affirmed those termination decrees.  **See In Re:  K.O.C., et al.**, 1079, 1081, 1083, 1085, 1087 & 1089 EDA 2024 (Pa. Super. filed July 29, 2024) (unpublished memorandum decision).

in Bethlehem. The family had no income and lived solely off of government benefits.

On October 27, 2021, the Northampton County Department of Human Services, Children, Youth and Families Division (CYS) received a Child Protective Services (CPS) referral that Children's half-brother, D.G., had been sexually abusing several of his younger siblings. N.T. Termination Hearing (Vol. I), 2/12/24, at 65-66. CYS caseworker, Heather Major, who investigates child abuse allegations, visited Mother's home to discuss a safety plan with the family. *Id.* at 69-70. Mother told Major that she did not believe the sexual abuse allegations lodged against D.G. were true.[4] *Id.* at 91. In forensic interviews, several of the Children disclosed to Major[5] that D.G. had been sexually abusing them. *Id.* at 95-97.[6] Major testified that "there [also] were concerns for the condition of the home." *Id.* at 71. Major stated that Mother's home was the worst home that she had ever seen in her professional capacity, describing it as "deplorable [and] unfit for a child or anybody to properly reside

_____

[4] Mother allegedly installed cameras in the home, but the cameras apparently did not show any inappropriate sexual behavior occurring in the house. Mother also claimed to have put locks on the outside of her daughters' bedroom doors at night to prevent anyone from entering.

[5] Detective Emily Falko from Bethlehem City Police Department also conducted a forensic interview of one of the Children regarding the allegations of sexual abuse inflicted upon her by D.G. *Id.* at 95-97.

[6] Major testified that one of the older children Facebook messaged Mother several times telling her about the sexual assaults, but Mother told her "you can do what you want when you are 18. [D.G.] is not going anywhere. . . . [G]o clean your room." *Id.* at 107.

- 4 -

in." *Id.* at 89. Major testified that the younger children in the home were "dirty, . . . smelled[,] . . . [and] looked like they needed to take a bath." *Id.* at 93. *See also id.* at 165-66 (CYS caseworker testifying younger Children had dirty fingernails, were wearing "very soiled" clothing, had "soiled diapers" and some had "lice infestations").

As a result of Parents' lack of ability to control Children or implement protective capacities, as well as the appalling state of the family home,[7] CYS assumed legal and physical custody of Children on October 28, 2021, via emergency protective orders. Children were subsequently placed into foster care homes, together, in groups of two or three. *Id.* at 98. Children were adjudicated dependent on November 8, 2021. A permanency plan was established for Mother that consisted of participation in, and successful completion of, a mental health evaluation and follow-through with all evaluator recommendations, completion of a comprehensive parental capacity evaluation, and maintenance of stable housing and income for at least six months. It was also determined that visitation would resume when recommended by Children's treatment team. At the time of the termination hearing, none of Children's therapists recommended Children's reunification with Mother either soon or immediately thereafter. *Id.* at 191.

_____

[7] On October 29, 2021, the family home was condemned and Mother lost her Section VIII housing voucher.

In early November 2021, Mother was charged, arrested, and taken into custody—all due to her failure to act following several of the Children telling her about D.G.'s sexual abuse. *Id.* at 100-04.[8]  Mother's bail conditions did not permit visitation with Children.[9]  Mother ultimately posted a surety bond and was released from jail in November 2023, at which time she moved in with maternal grandfather.

In January 2022, Alyssa Lindahl, Psy.D., performed a comprehensive mental health evaluation on Mother.  Doctor Lindahl prepared a report indicating that Mother did not believe her daughters' allegations that D.G. sexually abused them and their siblings, noted that Mother described one of her daughters as "vindictive and hypersexual," called another daughter "mean and a troublemaker," and referred to another daughter as a "liar." *Id.* at 37-38, 42.  Mother told Dr. Lindahl that she had been diagnosed with post-traumatic stress disorder (PTSD), anxiety, depression, and a hoarding disorder and that she did not believe she could ever overcome her hoarding behaviors. *Id.* at 39-41.  Doctor Lindahl also concluded that Mother had a

---

[8] D.G. admitted to sexually abusing nine of his siblings and was ultimately arrested and charged with various crimes.  On November 30, 2022, D.G. pled guilty to seven counts of indecent assault on a person less than 13 years of age.

[9] On March 17, 2023, Mother entered a plea of *nolo contendere* to the charge of intimidating a witness and endangering the welfare of children.  She received an aggregate sentence of 8 months and 29 days to 23 months and 28 days, followed by a 2-year probationary tail.  Mother was not permitted to have visitation for the first year following Children's removal from the family home.

borderline I.Q. and that her personality testing "suggested some schizoid personality traits with avoidant and paranoid features." *Id.* at 44.

Doctor Lindahl ultimately determined that Mother did not adequately protect Children from sexual abuse after she had been notified of it. *Id.* at 43. The doctor recommended Mother participate in a protective parenting program, an intensive outpatient program for supportive therapy, be administered psychotropic medications, and receive individual therapy for her psychiatric conditions. *Id.* at 44-45. Finally, Dr. Lindahl recommended that Mother not have unsupervised contact with Children until deemed appropriate by CYS. *Id.* at 46.

On July 13, 2023, CYS filed petitions to involuntarily terminate Mother's parental rights to Children pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act.[10] On February 12, 2024, the court held a termination hearing[11] where CYS caseworkers Shakira Roseway, Major, and Jennifer Lorah, forensic psychologist and evaluator Dr. Lindahl, Mother, and Father testified.[12] On February 12, 2024, the court entered six separate

---

[10] 23 Pa.C.S.A. §§ 2101-2938.

[11] At the hearing, the court marked and admitted the Juvenile Court record, for each of the six Children's dependency matters, into the instant record. N.T. Termination Hearing (Vol. 2), 2/12/24, at 159-60.

[12] Children's guardian *ad litem*, Leonard M. Mellon, Esquire, also joined in CYS' brief for purposes of appeal. Because counsel expressed that it may create a conflict of interest for him to represent two of Mother's other children who are not parties to this appeal, E.J.C. and Z.C., the court appointed Brian Lawser, *(Footnote Continued Next Page)*

decrees involuntarily terminating Mother's parental rights to each child pursuant to 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b).  On March 11, 2024, Mother contemporaneously filed six timely notices of appeal[13] and a Rule 1925(b) concise statement of errors complained of on appeal.  **See** Pa.R.A.P. 1925(a)(2)(i).

On appeal, Mother presents the following issues for our consideration:

(1)  Did the trial court err in finding that [Mother] had failed to fulfill her parental duties, or to work toward fulfillment of her parental duties through engagement with and satisfaction of the goals of her permanency plan for a period in excess of six (6) months?

(2)  Did the trial court err in finding that [Mother] had been rendered incapable of parenting and had refused to parent and failed to satisfy the requirements of her permanency plan, leaving [C]hildren without the benefit of parental care and has failed to provide for their physical and mental well-being?

(3)  Did the trial court err in finding that [Mother] was not prepared to assume her parental role?

_____

Esquire, to represent E.J.C.'s and Z.C.'s legal interests.  **See** 23 Pa.C.S.A. § 2313(a); **see also In re Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017) (where court finds guardian *ad litem* cannot adequately represent legal interests of child, counsel must be appointed).

[13] Mother has filed six separate notices of appeal in compliance with **Commonwealth v. Walker**, 185 A.3d 969, 977 (Pa. 2018), which held that "[I]n future cases [Pa.R.A.P.] 341(a) will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed.  The failure to do so will result in quashal of the appeal."  **See also In re M.P.**, 2019 PA Super 55 (Pa. Super. filed February 22, 2019) (applying **Walker** holding in termination of parental rights/goal change appeal).

(4)    Did the trial court err in finding that severing the parent-child relationship would not destroy an existing, necessary[,] and beneficial relationship?

(5)    Did the trial court err in finding that termination of [Mother's] parental rights would best serve the needs and welfare of [C]hildren?

(6)    Did the trial court err in finding that termination of [Mother's] parental rights is in the best interests of [C]hildren?

Appellant's Brief, at 6.

When we review a trial court's decision to grant or deny a petition to involuntarily terminate parental rights, we must accept the findings of fact and credibility determinations of the trial court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).  "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* (citation omitted).  "Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted).  We may not reverse merely because the record could support a different result.  *T.S.M.*, 71 A.3d at 267.  Additionally, we give great deference to the trial courts.  *Id.*  Moreover, "[t]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.  The standard of clear and convincing evidence is defined

as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence[,] in light of the totality of the circumstances[,] clearly warrants termination.

*In re Adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)).

Mother argues that CYS filed to meet its burden of proof under subsection 2511(a)(2) where

[Mother] remedied the conditions and causes [that] led to [C]hildren to be without essential parental care, control[,] or sustenance necessary for their physical or mental well-being. [Mother] has diligently pursued housing for [C]hildren, participated in all training, classes[,] and programs which she believed would hasten the arrival of the hope for reunification with [C]hildren. [Mother] has complied with every service and treatment recommended by [CYS]. These actions are all in direct contrast to the requirements for a termination of parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2).

Appellant's Brief, at 19.

In order to terminate parental rights under subsection 2511(a)(2), CYS must prove by clear and convincing evidence that:

[R]epeated and continued incapacity, abuse, neglect[,] or refusal of the parent has caused the child to be without essential parental care, control[,] or subsistence necessary for his physical or mental

- 10 -

well-being and the conditions and causes of the incapacity, abuse, neglect[,] or refusal cannot or will not be remedied by the parent.

23 Pa.C.S.A. § 2511(a)(2). Section 2511(a)(2) "emphasizes the child's present and future need for essential parental care, control or subsistence necessary for his physical or mental well-being," especially "where disruption of the family has already occurred and there is no reasonable prospect for reuniting it." *In re Z.P.*, 994 A.2d 1108, 1117 (Pa. Super. 2010) (citation and emphasis omitted).

While Mother claims she has "done everything within [her] capacit[y] to comply with the requirements and recommendations of [CYS]," she also readily acknowledges that she "fail[ed] to maintain either a stable income or stable housing." N.T. Termination Hearing (Vol. 1), 2/12/24, at 12. Instantly, Mother acknowledges that she is "uniquely unqualified and has been and continues to be disabled[14] with respect to complying with [CYS'] requirement of maintaining a stable and legitimate income. Nevertheless, [Mother] has testified to a hope and desire to one day join the workforce and find compliance with this aspect of the Agency's requirements." *Id.* at 11.

At the time of the termination hearing, Children had been removed from Mother's care for over one year and eight months. As of October 2023, Mother had complied with her plan objectives, including protective parenting education. N.T. Termination Hearing (Vol. 2), 2/12/24, at 149-50, 191; *id.*

_____

[14] CYS caseworker Jennifer Lorah testified that Mother told her she had a note from her doctor saying that she cannot work; however, Lorah had not yet seen the note. *Id.* (Vol. 2), at 189-90.

at 200 (CYS caseworker testifying Mother "participated in pretty much any service that she was able to" in prison, was "actively working with Lehigh Valley Families Together" when she was released from jail, and attends visits). CYS' main concern about Mother was more her "lack of progress, not necessarily compliance." *Id.* at 200.

Although Mother requested a housing list from a CYS caseworker and told CYS that she had been looking for housing in Monroe County through the Lehigh Valley Families Together program, she had not yet been successful as of the time of the termination hearing. Mother was living with Father in a one-and-one-half-bathroom apartment rented by paternal grandmother. Lorah testified that things still needed to be done to the house "in order to make it a return resource for [C]hildren," that she had not received a copy of the lease for the property from the landlord, and that she did not know who was legally permitted to live in the home. N.T. Termination Hearing (Vol. 2), 2/12/24, at 185-89; *see id.* at 205 (as of date of termination hearing, Mother had not provided CYS with verification that landlord or City of Bethlehem would allow 11 children and four adults to live in paternal grandmother's apartment). Moreover, at the time of the termination hearing, Mother had been denied receiving social security supplemental income or social security disability benefits, although she indicated that she had appealed those decisions. *Id.* at 201.

Based upon Mother's persistent inability to find suitable housing or earn a steady income, it is reasonable to conclude that Children's present and

future needs for "subsistence necessary for [their] physical or mental well-being" are not and will not be remedied. N.T. Termination Hearing (Vol. 2), 2/12/24, at 141-42 (CYS caseworker testifying was not aware of Mother having access to any mode of transportation, employment, or any proof of suitable housing for family if reunified with Children); *id.* at 157 (as of date of termination hearing, CYS had "no realistic expectation of [Parents obtaining] housing" and they had reported no income). Moreover, the fact that Mother's visits with Children have never progressed beyond unsupervised speaks volumes regarding her capacity to parent appropriately. *See id.* at 135-136 (CYS caseworker testifying during supervised visits Mother would have inappropriate conversations giving inaccurate information to Children, requiring redirection); *id.* at 153-54 CYS (caseworker testifying during visits Parents told Children to be disruptive in foster homes and that they did not have to listen to foster parents); *id.* at 154-55, 179 (CYS caseworker testifying foster parents reported Children's behaviors regressed following parental visits); *id.* at 179 (Mother telling Children when she is released from prison they were all going to be living together again as a family).

Finally, Mother's vow that she "hopes and desire[s] to one day" be able to find gainful employment so that she can provide financially for Children is untimely. *See In re Z.P.*, 994 A.2d at 1126 (where child had been in foster care for first two years of his life, termination under § 2511(a)(2) proper because "his need for permanency should not be suspended where there is little rational prospect of timely reunification"); *see also In re Adoption of*

*R.J.S*., 901 A.2d 502, 513 (Pa. Super. 2006) ("The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future."). Here, none of Children's therapists or service providers recommended that Children be reunified with Parents anytime soon. N.T. Termination Hearing (Vol. 2), 2/12/24, at 191. Mother, in fact, testified that if reunification were to occur, that she would not be capable of taking all of the Children back at once. *Id.* at 250. Mother, herself, testified that due to her mental health issues — obsessive compulsive disorder, hoarding disorder, anxiety and depression— as well as irritable bowel syndrome, she is incapable of working. N.T. Termination Hearing (Vol. 2.), 2/12/24, at 227-28. Moreover, her only plan to provide for Children financially was her suggestion that Father "get a job and [donate his] plasma." *Id.* at 231.

Thus, we find that termination was proper under subsection 2511(a)(2). *See In re S.C.*, 247 A.3d 1097, 1104 (Pa. Super. 2021) (citation omitted) ("The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.").

We are mindful that, under subsection 2511(b), "[t]he rights of a parent shall not be terminated solely on the basis of environmental factors such as

**inadequate housing**,[15] furnishings, **income**, clothing and medical care if found to be beyond the control of the parent." 23 Pa.C.S.A. § 2511(b) (emphasis added). However, here the trial court found that the "developmental, physical, and emotional needs and welfare of Child[ren] would not be met with Mother [and] that it was in Child[ren's] best interest[s] that [the] parental rights of Mother be terminated." Trial Court Opinion, 10/22/24, at 34. Children expressed their wishes to be adopted by their respective foster families who were adoptive resources. *See* N.T. Termination Hearing (Vol. 2), 2/12/24, at 162-73. The trial court's determination that Mother's behavior has exposed Children to horrendous traumatic events, not the least of which included failure to stop or protect the Children from sexual abuse by a sibling and also caused Children to be exposed to deplorable living conditions, is supported by the record. Additionally, the court found that Mother's failure to address her own co-dependency issues, inability to form healthy relationships with Children, and failure to set appropriate boundaries with Children support termination under subsection 2511(b). We agree.

After a careful review of the record, the briefs on appeal, and relevant case law, we conclude that the terminating Mother's parental rights was

---

[15] Mother testified that Father is on a waiting list for Section 8 housing in Northampton, Lehigh, Carbon and Schuylkill Counties. *Id.* at 232-33.

proper under subsections 2511(a)(2)[16] and (b). We rely upon Judge Sletvold's comprehensive 35-page trial court opinion in affirming the trial court's decrees. We direct the parties to attach a copy of that opinion in the event of further proceedings in the matter.

Decrees affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/19/2024

---

[16] An appellate court need only agree with the trial court's decision as to any one subsection of section 2511(a), as well as 2511(b), to affirm the termination of parental rights. *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2002).